# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

| | |
|---|---|
| T. K.,<br><br>                Plaintiff,<br><br>        v.<br><br>ADOBE SYSTEMS INCORPORATED,<br><br>                Defendant. | Case No. 17-CV-04595-LHK<br><br>**ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS FIRST AMENDED COMPLAINT; DISMISSING SUA SPONTE CLAIMS FOR INJUNCTIVE RELIEF**<br><br>Re: Dkt. No. 31 |

Plaintiff T.K., a minor, brings this putative class action against Adobe Systems Inc. ("Adobe") related to Adobe's sale of subscriptions to the Adobe Creative Cloud Platform ("ACCP") to minors. Before the Court is Adobe's motion to dismiss the first amended complaint or to strike the class allegations. Having considered the parties' briefs, the relevant law, and the record in this case, the Court GRANTS in part and DENIES in part Adobe's motion to dismiss the first amended complaint and DISMISSES sua sponte T.K.'s claims for injunctive relief for lack of Article III standing.

1

Case No. 17-CV-04595-LHK
ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS FIRST AMENDED
COMPLAINT; DISMISSING SUA SPONTE CLAIMS FOR INJUNCTIVE RELIEF

I.    **BACKGROUND**

A.    **Factual Background**

T.K. is a minor who lives in Puerto Rico.  First Amended Complaint ("FAC"), ECF No. 29 ¶ 11.  In March 2016, T.K. was given a one-year license to access ACCP as a gift.  *Id.* ¶¶ 11, 26. In order to access ACCP, T.K. was required to create an Adobe account, which involves agreeing to Adobe's terms of service for ACCP.  *Id.* ¶ 27.  T.K. was also required to provide credit or debit card information.  *Id.* ¶¶ 11, 28.  T.K. provided her own debit card information.  *Id.* ¶ 28.

On February 20, 2017, T.K. received an unsolicited email from Adobe informing her that her subscription would renew on March 20, 2017 on an annual basis for a fee of $49.99 per month plus tax.  *Id.* ¶ 31; Exh. C.  T.K. did not respond to this email.  FAC ¶ 31.  On or about March 21, 2017, T.K. was charged $52.99 by Adobe.  *Id.* ¶ 32; Exh. D.  On April 21, 2017, T.K. was charged $52.99 by Adobe.  FAC ¶ 33.

A short time later, "T.K. through her parent Ari Kresch contacted Adobe and disaffirmed the renewal of the agreement."  *Id.*  On April 26, 2017, Adobe refunded T.K. $52.99.  *Id.*  At some unspecified time after T.K. filed the complaint in this case, which was on August 10, 2017, "Adobe sent $52.99 to T.K.'s debit card.  T.K. did not voluntarily accept these funds."  *Id.* ¶ 34. T.K. alleges that she was injured notwithstanding the refunds because she was denied the use of these funds "beginning on April 26, 2017."  *Id.*

T.K. alleges that by initially refusing to refund both of T.K.'s monthly payments, Adobe refused to allow T.K. to disaffirm the automatically renewed agreement.  T.K. alleges that Adobe's refusal is contrary to California Family Code § 6710, which provides minors the right to disaffirm contracts.  *Id.* ¶¶ 35-36.  T.K. alleges that Adobe misinforms its users that all sales are final.  *Id.* ¶ 42.  Specifically, T.K. asserts that § 10.1 of the terms of service states that "[t]ermination of your account does not relieve you of any obligation to pay any outstanding fees." *Id.*  According to T.K., "[t]he clear implication is that even if you cancel, you must still pay.  This statement is contrary to the law of California and Adobe's obligations under California and Federal law."  *Id.*

Case No. 17-CV-04595-LHK
ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS FIRST AMENDED
COMPLAINT; DISMISSING SUA SPONTE CLAIMS FOR INJUNCTIVE RELIEF

T.K. seeks to represent the following putative class and subclass:

> All ACCP users who are or were minor children according to Adobe's own records for the four years preceding the date on which this complaint is filed through the date on which a class is certified ("Class"). Within the Class is a Subclass of minors who purchased access to the ACCP and attempted to disaffirm the agreement with Adobe according to Adobe's customer service records, but were charged fees according to the disaffirmed contract ("the Minors Disaffirming Subclass").

FAC ¶ 45.

**B.    Procedural History**

T.K. filed the original complaint on August 10, 2017. ECF No. 1. On November 16, 2017, Adobe filed a motion to dismiss the complaint and to strike the class allegations. ECF No. 17. On December 14, 2017, T.K. filed a first amended complaint. ECF No. 29. On January 2, 2018, the Court denied the motion to dismiss as moot. ECF No. 30. On January 5, 2018, Adobe filed a motion to dismiss the FAC and to strike the class allegations. ECF No. 31 ("Mot."). On January 19, 2018, T.K. filed an opposition. ECF No. 34 ("Opp'n"). On January 26, 2018, Adobe filed a reply. ECF No. 35 ("Reply").

**II.    LEGAL STANDARD**

**A.    Dismissal Pursuant to Federal Rule of Civil Procedure 12(b)(1)**

"Constitutional [or 'Article III'] standing concerns whether the plaintiff's personal stake in the lawsuit is sufficient to make out a concrete 'case' or 'controversy' to which the federal judicial power may extend under Article III, § 2." *City of Los Angeles v. County of Kern*, 581 F.3d 841, 845 (9th Cir. 2009) (quoting *Pershing Park Villas Homeowners Ass'n v. United Pac. Ins. Co.*, 219 F.3d 895, 899 (9th Cir. 2000)) (alteration in original). The plaintiff has the burden of establishing Article III standing. *See Thompson v. McCombe*, 99 F.3d 352, 353 (9th Cir. 1996) ("A party invoking the federal court's jurisdiction has the burden of proving the actual existence of subject matter jurisdiction."). To meet that burden, the plaintiff "must establish 'the irreducible constitutional minimum of standing,' consisting of three elements: injury in fact, causation, and a likelihood that a favorable decision will redress the plaintiff's alleged injury." *Lopez v. Candaele*,

3

630 F.3d 775, 785 (9th Cir. 2010) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992)). To establish an injury in fact, the plaintiff must show that he or she has suffered "an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical." *Lujan*, 504 U.S. at 560. "A plaintiff must demonstrate constitutional standing separately for each form of relief requested." *Davidson v. Kimberly-Clark Corp.*, 873 F.3d 1103, 1113 (9th Cir. 2017) (citing *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC) Inc.*, 528 U.S. 167, 185 (2000)).

When determining whether to dismiss a complaint for lack of Article III standing, a court "must accept as true all material allegations of the complaint and must construe the complaint in favor of the complaining party." *Maya v. Centex Corp.*, 658 F.3d 1060, 1068 (9th Cir. 2011) (citing *Warth v. Seldin*, 422 U.S. 490, 501 (1975)). "At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss we 'presum[e] that general allegations embrace those specific facts that are necessary to support the claim.'" *Id.* (citing *Lujan*, 504 U.S. at 561). However, "[t]his is not to say that plaintiff may rely on a bare legal conclusion to assert injury-in-fact." *Id.*

The Court has an "independent obligation to examine standing to determine whether it comports with the case or controversy requirement of Article III, Section 2 of the Constitution." *Krottner v. Starbucks Corp.*, 628 F.3d 1139, 1141 (9th Cir. 2010). "The jurisdictional question of standing precedes, and does not require, analysis of the merits." *Equity Lifestyle Props., Inc. v. Cty. of San Luis Obispo*, 548 F.3d 1184, 1189 n.10 (9th Cir. 2008); *see also Employers-Teamsters Local Nos. 175 & 505 Pension Trust Fund v. Anchor Capital Advisors*, 498 F.3d 920, 923 (9th Cir. 2007) ("Standing is the threshold issue of any federal action . . . ."). "Because federal courts are required to examine jurisdictional issues such as standing regardless of whether the parties raise the issue, the Court has 'both the power and the duty to raise the adequacy of [the plaintiff's] standing sua sponte.'" *Stahl Law Firm v. Judicate West*, No. C13-1668 TEH, 2013 WL 4873065, at *2 (N.D. Cal. Sept. 12, 2013) (quoting *Bernhardt v. County of Los Angeles*, 279 F.3d 862, 868

4

(9th Cir. 2001)) (alteration in *Stahl*). "[L]ack of Article III standing requires dismissal for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1)." *Maya*, 658 F.3d at 1067.

**B.      Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(6)**

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a defendant may move to dismiss an action for failure to allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.  The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citations omitted).  For purposes of ruling on a Rule 12(b)(6) motion, the Court "accept[s] factual allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).

Nonetheless, the Court is not required to "assume the truth of legal conclusions merely because they are cast in the form of factual allegations." *Fayer v. Vaughn*, 649 F.3d 1061, 1064 (9th Cir. 2011) (quoting *W. Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981)).  Mere "conclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss." *Adams v. Johnson*, 355 F.3d 1179, 1183 (9th Cir. 2004); *accord Iqbal*, 556 U.S. at 678. Furthermore, "'a plaintiff may plead [him]self out of court'" if he "plead[s] facts which establish that he cannot prevail on his . . . claim." *Weisbuch v. County of Los Angeles*, 119 F.3d 778, 783 n.1 (9th Cir. 1997) (quoting *Warzon v. Drew*, 60 F.3d 1234, 1239 (7th Cir. 1995)).

**C.      Motion to Strike Pursuant to Federal Rule of Civil Procedure 12(f)**

Federal Rule of Civil Procedure 12(f) permits a court to "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 26(f).  "[T]he function of a 12(f) motion to strike is to avoid the expenditure of time and

money that must arise from litigating spurious issues by dispensing with those issues prior to trial." *Sidney-Vinstein v. A.H. Robins Co.*, 697 F.2d 880, 885 (9th Cir. 1983). Motions to strike are generally disfavored and "should not be granted unless the matter to be stricken clearly could have no possible bearing on the subject of the litigation . . . . If there is any doubt whether the portion to be stricken might bear on an issue in the litigation, the court should deny the motion." *Platte Anchor Bolt, Inc. v. IHI, Inc.,* 352 F. Supp. 2d 1048, 1057 (N.D. Cal. 2004) (citations omitted). "With a motion to strike, just as with a motion to dismiss, the court should view the pleading in the light most favorable to the nonmoving party." *Id.* "Ultimately, whether to grant a motion to strike lies within the sound discretion of the district court." *Cruz v. Bank of New York Mellon,* No. 12-846, 2012 WL 2838957, at *2 (N.D. Cal. July 10, 2012) (citing *Whittlestone, Inc. v. Handi-Craft Co.,*618 F.3d 970, 973 (9th Cir. 2010)).

**D.    Leave to Amend**

Under Rule 15(a) of the Federal Rules of Civil Procedure, leave to amend "shall be freely granted when justice so requires," bearing in mind "the underlying purpose of Rule 15 to facilitate decision on the merits, rather than on the pleadings or technicalities." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (ellipses omitted). However, a court "may exercise its discretion to deny leave to amend due to 'undue delay, bad faith or dilatory motive on part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party . . . , [and] futility of amendment.'" *Carvalho v. Equifax Info. Servs., LLC*, 629 F.3d 876, 892-93 (9th Cir. 2010) (alterations in original) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

**III.    DISCUSSION**

Adobe asserts a number of arguments why the Court should dismiss T.K.'s complaint or strike various allegations. The Court addresses Adobe's arguments in the order in which Adobe raises them. Before doing so, however, the Court first briefly reviews California law on a minor's right to disaffirm a contract, which underpins the allegations in this case.

6

According to California Family Code § 6700, "a minor may make a contract in the same manner as an adult, subject to the power of disaffirmance" provided by § 6710. In turn, § 6710 states: "Except as otherwise provided by statute, a contract of a minor may be disaffirmed by the minor before majority or within a reasonable time afterwards or, in case of the minor's death within that period, by the minor's heirs or personal representative." "A contract (or conveyance) of a minor may be avoided by any act or declaration disclosing an unequivocal intent to repudiate its binding force and effect." *Deck v. Spartz, Inc.*, No. 2:11–CV–01123–JAM–DAD, 2011 WL 7775067, at *6 (E.D. Cal. Sept. 27, 2011) (quoting *Spencer v. Collins*, 104 P. 320, 322 (Cal. 1909)). "A minor's disaffirmation need not be in writing, as oral disaffirmation is sufficient." *Id.* (citing *Pereira v. Toscano*, 258 P. 429, 431 (Cal. Dist. Ct. App. 1927)). "Disaffirmation by a minor rescinds the entire contract, rendering it a nullity." *Id.* (citing *Scollan v. Gov't Employees Ins. Co.*, 222 Cal.App.2d 181, 183-84 (1963)). "The effect of disaffirmation by a minor is largely the same as rescission, and as such a legal action for disaffirmation is one in equity, and 'the trial court is vested with a broad discretion to see that equity is done.'" *Id.* (quoting *Le Baron v. Berryessa Cattle Co.*, 248 P. 779, 784 (Cal. Dist. Ct. App. 1926)). "Accordingly, if a minor seeks to disaffirm a contract under section 6710, equitable principles dictate that he or she 'must disaffirm the entire contract, not just the irksome portions.'" *I.B. v. Facebook, Inc.*, No. C 12-1894 CW, 2013 WL 6734239 at *4 (N.D. Cal. Dec. 20, 2013) (quoting *Holland v. Universal Underwriters Ins. Co.*, 270 Cal. App. 2d 417, 421 (1969)).

A.     **Motion to Strike "All Sales Are Final" Allegations**

Adobe first argues that the Court should strike as immaterial T.K.'s allegations that Adobe misinforms its users that all sales are final. Mot. at 5. Adobe explains that in its previous motion to dismiss the original complaint, Adobe moved to strike the "all sales are final" allegations because neither the ACCP contract nor Adobe's marketing material stated that all sales were final. *Id.* (citing ECF No. 17 at 5). T.K.'s FAC clarified that § 10.1 of the terms of service states that "[t]ermination of your account does not relieve you of any obligation to pay any outstanding fees,"

7

which T.K. alleges implies that all sales are final.  *Id.*  Adobe argues that this allegation fails as a matter of law.  According to Adobe, "[t]here is nothing deceptive about the existence of a termination provision, and there is no requirement that such provisions must provide notice of statutory rights to disaffirm."  *Id.*  Adobe argues that if T.K.'s theory were credited, "all contracts would have to enumerate other grounds for disaffirmance, such as intoxication, mental disability, or lack of competence."  *Id.*  T.K. responds that Adobe's practices as a whole, which include allowing minors to buy subscriptions, representing that those sales are nonrefundable, and charging cancellation fees when the minors attempt to disaffirm, constitute unfair business practices.  Opp'n at 2-3.

Viewing the allegations in the light most favorable to T.K., the Court cannot say that the "all sales are final" allegations "have no possible bearing on the subject of the litigation."  *Platte Anchor Bolt, Inc.,* 352 F. Supp. 2d at 1057.  First, Adobe cites nothing in support of its contention that the language of its termination provision is not misleading as a matter of law.  To the contrary, similar claims based on California Family Code § 6710 and terms of service stating that purchases of Facebook credits were non-refundable survived two motions to dismiss in *I.B. v. Facebook, Inc.,* 82 F. Supp. 3d 115 (N.D. Cal. 2015).  *See id.* at 1119.  Of course, the outcome in *I.B.* does not dictate the outcome in the instant case, but *I.B.* does undermine Adobe's argument that, as a matter of law, terms of service need not address or in some way account for minors' disaffirmance rights.  Because the language of Adobe's terms of service is not immaterial to T.K.'s claims, the Court DENIES Adobe's request to strike the "all sales are final" allegations.

**B.      T.K. Is Not Bound by Arbitration or Class Action Provisions in Disaffirmed Contract**

Next, Adobe argues that the Court should enforce the arbitration and no-class-action provisions of its terms of service.  Mot. at 6-7.  Adobe does not actually move to compel arbitration, but rather Adobe asserts that the Court should dismiss the case for lack of subject matter jurisdiction based on the arbitration and no-class-action provisions.  Adobe argues that a minor "must disaffirm the entire contract, not just the irksome portions."  Mot. at 6 (quoting

*Holland*, 270 Cal. App. 2d at 421). Adobe argues that because T.K. used ACCP for fourteen months and seeks to rely on the choice of law provision in the terms of service in the instant case, "equity demands that she also be held to the dispute resolution and no-class-action provisions to which she agreed." Mot. at 7. In support of this argument, Adobe cites several cases in which district courts enforced forum selection or limitation of liability clauses against minors after minors disaffirmed part or all of a contract. *Id.*

In particular, Adobe relies on *E.K.D. v. Facebook, Inc.*, 885 F. Supp. 2d 894 (S.D. Ill. 2012), in which a court enforced a forum selection clause against minors. In *E.K.D.*, the court reasoned that minors could not accept the benefits of the contract while also voiding the contract "in an attempt to escape the consequences of a clause that does not suit them." *Id.* at 899. However, *E.K.D.* is distinguishable from the instant case because the minors in *E.K.D.* continued to use Facebook even after purportedly disaffirming sections of the terms of service. *Id.* at 900; *see also C.M.D. v. Facebook, Inc.*, 621 F. App'x 488, 489 (9th Cir. 2015) (unpublished) ("By continuing to use facebook.com after bringing their action, Plaintiffs manifested an intention not to disaffirm the contract."). Thus, the court's ruling in *E.K.D.* was based in part on the principles that a minor cannot continue to receive the benefits of a contract after disaffirming and that a minor cannot disaffirm only parts of a contract. In the instant case, by contrast, T.K. has disaffirmed the entire renewal agreement and there is no evidence to suggest that she continues to use ACCP. *See* FAC ¶ 33; *I.B. v. Facebook, Inc.*, 905 F. Supp. 2d 989, 1002-03 (N.D. Cal. 2012) (distinguishing *E.K.D.* on these grounds).

In addition, contrary to Adobe's argument, the fact that T.K. used ACCP for fourteen months and retained these benefits does not mean that she is bound by the terms of the disaffirmed contract. Mot. at 6. "Disaffirmation by a minor rescinds the entire contract, rendering it a nullity." *Deck*, 2011 WL 7775067 at *6. "Section 6710 [does not] require[] restoration of consideration for any disaffirmed contract." *Id.*. In *Berg v. Traylor*, 148 Cal. App. 4th 809 (2007), for example, the California Court of Appeal held that a minor had the right to disaffirm a

contract even for services already rendered.  *Id.* at 812-13, 818-20.  California courts have explained the policy reasons behind allowing this result:

> The law shields minors from their lack of judgment and experience and under certain conditions vests in them the right to disaffirm their contracts.  Although in many instances such disaffirmance may be a hardship upon those who deal with an infant, the right to avoid his contracts is conferred by law upon a minor for his protection against his own improvidence and the designs of others.  It is the policy of the law to protect a minor against himself and his indiscretions and immaturity as well as against the machinations of other people and to discourage adults from contracting with an infant.  Any loss occasioned by the disaffirmance of a minor's contract might have been avoided by declining to enter into the contract.

*Id.* at 818 (quoting *Niemann v. Deverich*, 98 Cal. App. 2d 787, 793 (1950)) (internal quotation mark omitted).

Moreover, T.K.'s reference to the choice of law provision in the terms of service is not inconsistent with her disaffirmance of the entire contract.  T.K. explicitly states that she and the Class "are not subject to the ACCP General Terms of Use," but T.K. argues that "[b]y choosing California law for the resolution of disputes in the agreement, Adobe concedes that it is appropriate for this Court to apply California law to the instant dispute."  FAC ¶¶ 58-59.  The court in *I.B.* relied on similar reasoning when it held that California Family Code § 6710 applied extraterritorially.  *See I.B.*, 82 F. Supp. 3d at 1121 ("Clearly, Facebook intended California law to control. . . .  The [terms of service] thus contains a clear and unambiguous election of California law to govern the relationship, and disputes, between the parties.").

To summarize, T.K. has disaffirmed the entire renewal agreement.  There is no requirement that T.K. return the consideration she received, *Deck*, 2011 WL 7775067 at *6, and no evidence that T.K. continues to use ACCP.  T.K.'s reference to the California choice of law provision in the agreement is not inconsistent with her disaffirmance.  In these circumstances, the Court sees no basis to enforce the arbitration or no-class-action terms of a contract that is now a "nullity."  *Id.*  Adobe's request that the Court dismiss this action for lack of subject matter jurisdiction based on the arbitration and no-class-action terms of the terms of service is DENIED.

Case No. 17-CV-04595-LHK
ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS FIRST AMENDED
COMPLAINT; DISMISSING SUA SPONTE CLAIMS FOR INJUNCTIVE RELIEF

## C. CLRA Claim

The CLRA prohibits "unfair methods of competition and unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or which results in the sale or lease of goods or services to any consumer." Cal. Civ. Code § 1770(a); *Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136, 1140 (9th Cir. 2012). The CLRA applies only to a limited set of consumer transactions, and is not a law of "general applicability." *Ting v. AT&T*, 319 F.3d 1126, 1148 (9th Cir. 2003). For example, only a consumer may allege a violation of the CLRA. *See id.* A "consumer" is defined as "an individual who seeks or acquires, by purchase or lease, any goods or services for personal, family, or household purposes." Cal. Civ. Code § 1761(d). "Goods" is defined as "tangible chattels bought or leased for use primarily for personal, family, or household purposes." *Id.* § 1761(a). "Services" is defined as "work, labor, and services for other than a commercial or business use." *Id.* § 1761(b). Courts have differed over whether software is a good or service within the meaning of the CLRA, with the reasoning depending in part on whether the consumer obtained the software online or at a physical store. *See, e.g.*, *Yahoo! Inc. Customer Data Security Breach Litig.*, No. 16-MD-2752-LHK, 2018 WL 1243332, at *19-20 (N.D. Cal. Mar. 9, 2018). In addition, "consumers seeking to recover damages under the CLRA based on a fraud theory must prove 'actual reliance on the misrepresentation and harm.'" *Sateriale v. R.J. Reynolds Tobacco Co.*, 697 F.3d 777, 794 (9th Cir. 2012) (quoting *Nelson v. Pearson Ford Co.*, 112 Cal. Rptr. 3d 607, 638 (Ct. App. 2010)).

T.K. alleges that ACCP is a service within the meaning of the CLRA. FAC ¶¶ 85-86. T.K. alleges that Adobe violated § 1770(a)(14) of the CLRA, which prohibits "[r]epresenting that a transaction confers or involves rights, remedies, or obligations that it does not have or involve, or that are prohibited by law." Cal. Civ. Code § 1770(a)(14); FAC ¶ 88. Specifically, T.K. alleges that Adobe's statement in § 10.1 of its terms of service that "[t]ermination of your account does not relieve you of any obligation to pay any outstanding fees" violates § 1770(a)(14). FAC ¶¶ 87-88.

Adobe argues that T.K.'s CLRA claim should be dismissed because software is not a

11

"good or service" under the CLRA and because T.K. does not allege reliance. Mot. at 8-10. With respect to reliance, T.K. responds that "in purchasing access to Adobe's ACCP, Plaintiff and the Class relied on the misrepresentations contained in the deceptive nature of the ACCP language, inducing Plaintiff's belief that Plaintiff 'had no right to either disaffirm their contracts or receive refunds,' FAC ¶ 3. Plaintiff has alleged and did, in fact, rely on Defendant's misrepresentations, which were the cause of her injuries, fulfilling the fraudulent prong of the UCL." Opp'n at 8. Notably, paragraph 3 of the FAC, which T.K. cites, does not allege that she actually read the terms of service or relied on those terms. Instead, paragraph 3 states that "Adobe deceptively and specifically designed practices to induce Plaintiff and the Class to believe they had no right to either disaffirm their contracts or receive refunds, when in fact they did have such a right." FAC ¶ 3. Nowhere else in the FAC does T.K. allege that she ever read § 10.1 of the terms of service, nor that she relied on the statement in § 10.1 that is the basis of her CLRA claim. Even assuming that T.K. can amend the FAC to adequately plead reliance, it is not clear how T.K. was harmed by the alleged misrepresentation in § 10.1. T.K.'s alleged economic injury appears to stem from Adobe's initial refusal to refund both of her $52.99 payments, which T.K. alleges violated California Family Code § 6710. *See* FAC ¶ 89 ("Plaintiff and the Class suffered damages when they were denied the right to disaffirm the agreement and were either charged a cancellation fee or were denied a refund."). T.K. does not explain how her confusion about her rights under California law, which she alleged was caused by the language in § 10.1 of the terms of service, is related to her injury, which she sustained after exercising the very right she alleged that Adobe misled her about—her right to disaffirm.

Because T.K. has failed to plead reliance on the allegedly misleading statement in § 10.1 of the terms of service, the Court GRANTS Adobe's motion to dismiss T.K.'s CLRA claim. However, the Court grants T.K. leave to amend because she may be able to plead sufficient facts to establish reliance as required by the CLRA. Because the Court finds that T.K. did not allege reliance, the Court need not reach whether ACCP is a good or service under the CLRA.

12

**D.    UCL Claim**

The UCL prohibits unfair competition, including "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising." Cal. Bus. & Prof. Code § 17200. The UCL creates a cause of action for business practices that are (1) unlawful, (2) unfair, or (3) fraudulent. Each "prong" of the UCL provides a separate and distinct theory of liability. *Lozano v. AT & T Wireless Servs., Inc.*, 504 F.3d 718, 731 (9th Cir. 2007). T.K. asserts claims under the unlawful and fraudulent prongs of the UCL. *See* FAC ¶ 100-01. Although T.K. uses the word "unfair" in her UCL claim, she does not appear to assert a distinct theory under the unfair prong of the UCL. *See id.* ¶ 102. The unlawful prong of the UCL prohibits "anything that can properly be called a business practice and that at the same time is forbidden by law." *Cel-Tech Commc'ns., Inc. v. L.A. Cellular Telephone Co.*, 20 Cal.4th 163, 180 (1999) (quotation marks and citations omitted). "By proscribing 'any unlawful' business practice, the UCL permits injured consumers to 'borrow' violations of other laws and treat them as unlawful competition that is independently actionable." *In re Adobe Sys., Inc. Privacy Litig.*, 66 F. Supp. 3d 1197, 1225 (N.D. Cal. 2014) (quoting *Cel-Tech Commc'ns.*, 20 Cal. 4th at 180). To state a claim under the fraudulent prong of the UCL, a plaintiff is "required to prove 'actual reliance on the allegedly deceptive or misleading statements,' and that 'the misrepresentation was an immediate cause of the injury-producing conduct.'" *Sateriale*, 697 F.3d at 793 (first quoting *Kwikset v. Superior Court*, 51 Cal. 4th 310 (2011), then quoting *In Re Tobacco II Cases*, 46 Cal. 4th 298 (2009)).

Adobe argues that T.K. does not have statutory standing under the UCL because the FAC alleges that some of Adobe's contracts with minors "invariably" involve funds within the control of the minors' parents. Mot. at 10-11 (quoting FAC ¶ 41). As a result, Adobe concludes that it is T.K.'s parents, not T.K., who have been economically harmed, and thus it is T.K.'s parents, not T.K., who have standing under the UCL. Adobe's argument is not persuasive. Contrary to Adobe's reasoning, the fact that T.K. alleges that *some* of Adobe's transactions with minors involve the minors' parents' money does not mean that T.K.'s transaction involved T.K.'s parents' money. T.K. clearly alleges that she provided her own debit card information to Adobe and used

13

her "own funds to pay for the ACCP." FAC ¶¶ 28, 40. At this stage, the Court must accept T.K.'s allegations about the source of her funds as true. Thus, the Court DENIES Adobe's motion to dismiss T.K.'s UCL claim insofar as Adobe argues that T.K. lacks statutory standing because she used her parents' money to pay for ACCP.

Adobe also argues that T.K. has not alleged reliance as required to support a claim under the UCL's fraudulent prong. Mot. at 11. As discussed above with respect to the CLRA claim, T.K. does not allege in the FAC that she read or relied upon § 10.1 of the terms of service, nor does she explain how her economic injury was related to the alleged misrepresentation in § 10.1. As a result, the Court GRANTS Adobe's motion to dismiss the UCL claim insofar as it is premised on the fraudulent prong of the UCL. The Court grants T.K. leave to amend because she may be able to plead sufficient facts to establish reliance with respect to her fraudulent prong claim.

However, because T.K. has alleged that Adobe's initial refusal to return both of her payments under the disaffirmed contract violated California Family Code § 6710 and that she was injured by this refusal, the Court DENIES Adobe's motion to dismiss the UCL claim insofar as the UCL claim is premised on the unlawful prong of the UCL.

**E.     Breach of the Implied Covenant of Good Faith and Fair Dealing Claim**

Every contract in the state of California contains an implied covenant of good faith and fair dealing that neither party will injure the right of the other party to receive the benefits of the agreement. *Apple In-App Purchase Litig.*, 855 F.Supp.2d 1030, 1041 (N.D. Cal. 2012) (citing *Wolf v. Walt Disney Pictures & Tel.*, 162 Cal. App. 4th 1107, 1120 (2008)). "The covenant is implied in every contract in order to protect the express covenants or promises of the contract." *Imber-Gluck v. Google, Inc.*, No. 5:14–CV–01070–RMW, 2014 WL 3600506, at *8 (N.D. Cal. July 21, 2014). The implied covenant "cannot impose substantive duties or limits on the contracting parties beyond those incorporated in the specific terms of their agreement." *Appling v. State Farm Mut. Auto. Ins. Co.*, 340 F.3d 769, 779 (9th Cir. 2003) (quoting *Guz v. Bechtel Nat.*

14

*Inc.*, 24 Cal.4th 317, 350 (2000)).

"A plaintiff asserting a claim for breach of the implied covenant of good faith and fair dealing must allege the following elements: (1) the existence of a contract; (2) the plaintiff did all, or substantially all of the significant things the contract required; (3) the conditions required for the defendant's performance had occurred; (4) the defendant unfairly interfered with the plaintiff's right to receive the benefits of the contract; and (5) the plaintiff was harmed by the defendant's conduct." *Oculus Innovative Sciences, Inc. v. Nofil Corp.*, 2007 WL 2600746, at *4 (N.D. Cal. Sept. 10, 2007) (quoting *Garey/Philadelphia v. Yoshinoya West, Inc.*, No. B186885, 2006 WL 3759415 (Cal. Ct. App. Dec. 21, 2006)).

T.K. alleges that "Adobe's conduct . . . constitutes a breach of its duty of good faith and fair dealing, in that, among other things, it denied the Plaintiff and the Subclass their right to disaffirm the contract and instead, imposed penalties upon Plaintiff and the Subclass." FAC ¶ 79. Adobe argues that T.K. cannot maintain a breach of the implied covenant claim on a contract that she disaffirmed. Mot. at 11-12. In addition, Adobe argues that T.K. has not alleged that Adobe frustrated T.K.'s right to receive the benefits of the contract. *Id.* The Court agrees with Adobe's second point, and so need not reach the first point. Specifically, T.K. has not alleged that any of Adobe's actions frustrated her right to receive the benefits of the contract. Nor can the Court see how T.K. could so allege. T.K.'s entire case is premised on her claims that the terms of service misled her about her rights under California law and that Adobe violated California law by refusing to honor her disaffirmance of the contract. By T.K.'s own admission, the contract did not expressly promise her the right to disaffirm. While Adobe's alleged conduct may be actionable under other causes of action, it is not actionable as a breach of the implied covenant of good faith and fair dealing, which only covers "the express covenants or promises of the contract." *Imber-Gluck*, 2014 WL 3600506 at *8. Accordingly, the Court GRANTS Adobe's motion to dismiss the implied covenant of good faith and fair dealing claim because Adobe's alleged actions did not interfere with T.K.'s right to receive the benefits of the contract. Because the Court finds that

15

1    amendment would be futile, this dismissal is with prejudice.  *See Carvalho*, 629 F.3d at 892-93.

2    **F.      Quasi-Contract/Unjust Enrichment Claim**

3          "[I]n California, there is not a standalone cause of action for 'unjust enrichment,' which is

4    synonymous with 'restitution.'"  *Astiana v. Hain Celestial Grp., Inc.*, 783 F.3d 753, 762 (9th Cir.

5    2015).  However, "[w]hen a plaintiff alleges unjust enrichment, a court may 'construe the cause of

6    action as a quasi-contract claim seeking restitution.'"  *Id.* (quoting *Rutherford Holdings, LLC v.*

7    *Plaza Del Rey*, 223 Cal. App. 4th 221 (2014)).  "A person is enriched if he receives a benefit at

8    another's expense.  The fact that one person benefits another is not, by itself, sufficient to require

9    restitution."  *Hendren v. Goldberg*, No. B164667, 2004 WL 964891, at *6 (Cal. Ct. App. May 6,

10   2004).  "The person receiving the benefit is required to make restitution only if the circumstances

11   are such that, as between the two individuals, it is unjust for the person to retain it."  *Id.* (citing

12   *First Nationwide Savings v. Perry*, 11 Cal.App.4th 1657, 1662-1663 (1992), *California Medical*

13   *Assn. v. Aetna U.S. Healthcare of California, Inc.*, 94 Cal.App.4th 151, 172 (2001), and Rest.,

14   Restitution, § 1, com. c.)); *see also Astiana*, 783 F.3d at 762 (explaining that restitution and unjust

15   enrichment "describe the theory underlying a claim that a defendant has been unjustly conferred a

16   benefit through mistake, fraud, coercion, or request" (internal quotation marks omitted)).

17          T.K. alleges that Adobe was unjustly enriched by initially refusing to fully refund the

18   payments that T.K. made under the renewal agreement even after she disaffirmed.  FAC ¶¶ 119-

19   22.  T.K. asserts that she and the Subclass are entitled to recover from Adobe "all amounts

20   wrongfully collected and improperly retained by Adobe, plus interest thereon."  *Id.* ¶ 123.

21          Adobe first argues that T.K. cannot bring a quasi-contract claim now for payments that she

22   made Adobe while there was a contract in force.  Mot. at 12 (citing *Lloyd v. Williams*, 227 Cal.

23   App. 2d 646, 649 (1964) ("A party cannot retain substantial benefits under an express contract and

24   recover under the theory of an implied contract.")).  T.K. responds that "when a contract is void, a

25   cause of action for unjust enrichment in the guise of restitution under quasi-contract principle

26   applies."  Opp'n at 9.  Specifically, T.K. cites the California Court of Appeal's decision in

27

28
Case No. 17-CV-04595-LHK
ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS FIRST AMENDED
COMPLAINT; DISMISSING SUA SPONTE CLAIMS FOR INJUNCTIVE RELIEF

*Rutherford Holdings*, which states that "restitution may be awarded in lieu of breach of contract damages when the parties had an express contract, but it was procured by fraud or is unenforceable or ineffective for some reason." 223 Cal. App. 4th at 231 (quoting *McBride v. Boughton*, 123 Cal. App. 4th 379, 388 (2004)). "Thus, a party to an express contract can assert a claim for restitution based on unjust enrichment by 'alleg[ing in that cause of action] that the express contract is void or was rescinded.'" *Id.* (quoting *Lance Camper Mfg. Corp. v. Republic Indemnity Co.*, 44 Cal. App. 4th 194, 203 (1996)). That is precisely the case here. T.K.'s disaffirmance voided the contract. Under *Rutherford Holdings*, T.K. can assert a quasi-contract claim based on Adobe's initial refusal to refund all of her payments. *See id.*

Adobe also argues that even if T.K. could bring a quasi-contract claim, her claim should still be dismissed because she "has enjoyed the benefit of the product; she was not charged any cancellation fee, and she was refunded her money." *Id.* Although Adobe frames this argument as a matter of equity, the Court finds that it is more appropriately addressed as a question of mootness because it is undisputed that at the time T.K. filed this action, Adobe had only refunded T.K. half of the payments she made under the disaffirmed contract, and thus Adobe at that time had retained some of T.K.'s funds. *See* ECF No. 1 ¶ 32; ECF No. 17 at 3; FAC ¶¶ 33-34. The question, then, is whether Adobe's subsequent refund of the other half of T.K.'s payment mooted her unjust enrichment/quasi-contract claim.

"A case becomes moot only when it is impossible for a court to grant any effectual relief whatever to the prevailing party." *Knox v. Serv. Employees Int'l Union, Local 1000*, 567 U.S. 298, 307 (2012) (internal quotation marks omitted). "As long as the parties have a concrete interest, however small, in the outcome of the litigation, the case is not moot." *Chafin v. Chafin*, 568 U.S. 165, 173 (2013) (internal quotation marks and citations omitted). "If an intervening circumstance deprives the plaintiff of a personal stake in the outcome of the lawsuit, at any point during litigation, the action can no longer proceed and must be dismissed as moot." *Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66, 72 (2013) (internal quotation marks omitted).

In *Campbell-Ewald Co. v. Gomez*, 136 S. Ct. 663 (2016), the U.S. Supreme Court held that "an unaccepted settlement offer or offer of judgment does not moot a plaintiff's case." *Id.* at 672. The U.S. Supreme Court did not reach whether "the result would be different if a defendant deposits the full amount of the plaintiff's individual claim in an account payable to the plaintiff, and the court then enters judgment for the plaintiff in that amount." *Id.* The Ninth Circuit addressed that situation in *Chen v. Allstate Insurance Co.*, 819 F.3d 1136 (9th Cir. 2016). In *Chen*, the defendant deposited "$20,000 in full settlement of [the plaintiff's] individual monetary claims in an escrow account" pending entry of final judgment and agreed to the plaintiff's requested injunctive relief. *Id.* at 1138. The Ninth Circuit held that where "injunctive relief has been offered, and funds have been deposited in an escrow account, relief has been offered, but it has not been received." *Id.* Because "a claim becomes moot when a plaintiff *actually receives* complete relief on [a] claim, not merely when that relief is offered or tendered," the Ninth Circuit held that the claim in *Chen* was not moot. *Id.* In determining whether the plaintiff had been afforded "complete relief," the Ninth Circuit looked to the relief sought in the complaint. *Id.* at 1142, 1144-45. The Ninth Circuit explained that "[w]hen a plaintiff has received 'all the relief [he] could win on the merits,' an adjudication would have no 'consequences on remaining related disputes between the parties' and 'nothing further would be ordered by the court, there is no point in proceeding to decide the merits.'" *Id.* at 1142 (quoting 13B Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 3533.2 (3d ed. 2015)).

The Ninth Circuit went on to state that even if "the district court were to enter judgment providing complete relief on [the plaintiff's] individual claims for damages and injunctive relief before class certification, fully satisfying those individual claims, [the plaintiff] still would be entitled to seek certification." *Id.* This is because the Ninth Circuit had previously held that where a defendant engages in a tactic of "picking off" lead plaintiffs to avoid a class action, the named plaintiff's claim is "transitory in nature and may otherwise evade review" such that dismissing for mootness is inappropriate. *Id.* at 1142-43 (citing *Pitts v. Terrible Herbst, Inc.*, 653

18

F.3d 1081, 1091 (9th Cir. 2011)); *see also id.* at 1147 (citing *U.S. Parole Comm'n v. Geraghty*, 445 U.S. 388, 404 (1980), and *Deposit Guaranty National Bank v. Roper*, 445 U.S. 326, 339 (1980)). The Ninth Circuit explained that "[w]hen a named plaintiff has requested class certification and class relief in its complaint, but has not yet had a reasonable opportunity to file a motion seeking class certification, an offer of individual relief should not be considered to be a tender of all relief requested in the complaint." *Id.* at 1148 (quoting 5 *Moore's Federal Practice*, § 23.64[1][b]).

Since *Chen*, other courts in the Ninth Circuit have declined to dismiss as moot claims where a named plaintiff rejected a settlement offer and had not yet moved for class certification. *See, e.g.*, *Stromberg v. Ocwen Loan Servicing, LLC*, No.15-cv-04719-JST, 2017 WL 2686540, at *7-8 (N.D. Cal. June 22, 2017) (holding that the plaintiff's claim was not moot because she rejected the settlement offer and that even if the individual claim were moot, the Court would not dismiss the claim until the plaintiff "had a fair opportunity to move for class certification"); *Edwards v. Oportun, Inc.*, 193 F. Supp. 3d 1096 (N.D. Cal. 2016) (same); *see also Stromberg*, 2017 WL 2686540 at *8 (collecting cases). Two cases are particularly relevant to the Court's analysis here because, unlike *Chen*, they address circumstances in which the plaintiff received money from the defendant, not just an offer of money: *Davis v. United States*, No. 16-cv-6258-TEH, 2017 WL 1862506 (N.D. Cal. May 9, 2017), and *Luman v. NAC Marketing Co.*, No. 2:13-cv-656-KJM-AC, 2017 WL 3394117 (E.D. Cal. Aug. 8, 2017).

In *Davis*, the named plaintiffs in a putative class action sought "a determination of the amount of retroactive military retired pay to which they were entitled, as well as actual payment of such pay." 2017 WL 1862506 at *1. After the complaint was filed, the defendant sent checks to both plaintiffs for the amounts that defendant had determined were due. *Id.* at *1-2. Plaintiffs apparently accepted these payments. The defendant then argued that the case was moot and attempted to distinguish *Chen* by arguing that the plaintiffs in *Davis* had received actual relief, not only an offer of relief. *Id.* at *3. Relying on the Ninth Circuit's decision in *Pitts*, the court

19

rejected this argument and held that the plaintiffs must be allowed to seek class certification even if their individual claims were satisfied. *Id.*

The facts of *Luman* are even closer to those of the instant case. In *Luman*, the plaintiffs brought false advertising claims against the defendant. 2017 WL 3394117 at *1. The district court initially held that the plaintiffs' individual claims for monetary relief were rendered moot when the defendant refunded the plaintiffs' money for their purchases. *Id.* The plaintiffs appealed this decision to the Ninth Circuit, which remanded for the district court to reconsider its dismissal in light of the U.S. Supreme Court's decision in *Campbell-Ewald Co. Id.* at *2 (citing *Luman v. Theismann*, 647 F. App's 804, 807 (9th Cir. 2016) (unpublished)). On remand, the district court distinguished *Campbell-Ewald Co.* and *Chen* from the facts of *Luman*, because in *Luman* the defendant "did more than simply offer to repay [the plaintiff]; [the defendant] deposited the money into [the plaintiff's] account, thereby precluding [the plaintiff] from declining the offer." *Id.* However, the district court followed *Chen* to determine whether the refund provided the plaintiff "complete relief." *Id.* at *3. The court looked to the complaint and determined that the plaintiff requested monetary damages, injunctive relief, and attorney's fees and costs. Although the defendant had refunded the money that the plaintiff paid for the product, the defendant "ha[d] not agreed to the injunctive relief [the plaintiff] request[ed], paid his attorney's fees, or reimbursed his litigation related costs." *Id.* Thus, the district court held that the plaintiff's claims were not moot because the defendant had not afforded the plaintiff "complete relief." *Id.*

Here, T.K.'s FAC requests class certification, designation as class representative, declaratory judgment, an injunction, individual damages, restitution (with interest), and attorney's fees and costs (with interest). With respect to the quasi-contract/unjust enrichment claim, Adobe's refund of T.K.'s payments made under the renewal agreement does not offer T.K. complete relief, at least because Adobe has not paid the requested interest, attorney's fees, or costs. *See Luman*, 2017 WL 3394117 at *3. Moreover, even if T.K.'s claim were moot, under *Chen* and *Pitts*, the Court would not dismiss based on mootness before T.K. has the opportunity to seek class

20

certification. *See Davis*, 2017 WL 1862506 at *3. Accordingly, Adobe's motion to dismiss the quasi-contract/unjust enrichment claim is DENIED.

## G. Declaratory Judgment Claim

Pursuant to the Declaratory Judgment Act, "[i]n a case of actual controversy," the Court "may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a). "This statute does not create new substantive rights, but merely expands the remedies available in federal courts." *Shell Gulf of Mexico, Inc. v. Center for Biological Diversity, Inc.*, 771 F.3d 632, 635 (9th Cir. 2014). "To determine whether a declaratory judgment action presents a justiciable case or controversy, courts consider 'whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.'" *Id.* (quoting *Md. Cas. Co. v. Pac. Coal & Oil Co.*, 312 U.S. 270, 273 (1941)).

A claim for declaratory relief may be "unnecessary where an adequate remedy exists under some other cause of action." *Reyes v. Nationstar Mortg. LLC*, No. 15-CV-01109-LHK, 2015 WL 4554377, at *7 (N.D. Cal. July 28, 2015) (quoting *Mangindin v. Wash. Mut. Bank*, 637 F. Supp. 2d 700, 707 (N.D. Cal. 2009)). However, "[t]he existence of another adequate remedy does not preclude a declaratory judgment that is otherwise appropriate." Fed. R. Civ. P. 57. Ultimately, a critical question is whether the declaratory relief "will serve a useful purpose in clarifying and settling the legal relations in issue." *McGraw-Edison Co. v. Preformed Line Prods. Co.*, 362 F.2d 339, 342 (9th Cir. 1966).

T.K. seeks "a determination by the Court that: (a) this action may proceed and be maintained as a class action; (b) the sales contracts between Adobe and the Class relating to the subscription to the ACCP are voidable at the option of the respective Class members; (c) if the Class members elect to void the contracts, they will be entitled to interest thereon; (d) if the Subclass members actually attempted to disaffirm the contracts and were charged monies by

United States District Court
Northern District of California

Adobe, these monies were not owed and those Subclass members are entitled to restitution and interest thereon; [and] (e) an award of reasonable attorney's fees and costs of suit to Plaintiff and the Class is appropriate." FAC ¶ 73.

Adobe argues that because all of T.K.'s other claims should be dismissed, the declaratory judgment claim should also be dismissed for lack of subject matter jurisdiction. Mot. at 13. Alternatively, Adobe argues that if the Court finds that any claim survives, the Court should exercise its discretion not to issue declaratory judgment, "given the equities of the case." *Id.* Specifically, Adobe argues that T.K. enjoyed the benefit of ACCP, T.K. received a full refund, and "Adobe does not contest that minors have the right to disaffirm contracts, that a parent or guardian can disaffirm a contract on behalf of a minor, that Adobe's contracts with members of the Class are voidable, or that Plaintiff has disaffirmed her own contract with Adobe." Mot. at 13-14 (internal citations omitted). As a result, Adobe contends that a declaratory judgment would serve no useful purpose. *Id.* at 14. T.K. responds that declaratory judgment "would serve to ensure that members of the Class are apprised of their right to disaffirm the contract, that they would be relieved of their obligation to pay outstanding fees, and that they would be entitled to refunds if they disaffirmed and were denied a refund." Opp'n at 11.

Because some of T.K.'s claims survive, the Court DENIES Adobe's motion to dismiss the declaratory judgment claim for lack of subject matter jurisdiction. The Court also declines to dismiss the declaratory judgment claim as an exercise of discretion because the Court finds that a declaratory judgment would serve a useful purpose. First, the declaratory relief and other claims seek different relief. *See Yahoo! Inc. Customer Data Security Breach Litig.*, 2018 WL 1243332 at *17-18. While T.K.'s CLRA, UCL, and quasi-contract/unjust enrichment claims seek retrospective relief—namely, damages—for the past harm that T.K. suffered, the declaratory relief claim seeks a determination about the Class's and Subclass's rights under California law, which would govern future interactions between Adobe and the Class and Subclass. *See id.* (drawing similar distinction). In addition, even accepting as true Adobe's representations that it does not

Case No. 17-CV-04595-LHK
ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS FIRST AMENDED COMPLAINT; DISMISSING SUA SPONTE CLAIMS FOR INJUNCTIVE RELIEF

dispute minors' rights to disaffirm contracts, Mot. at 13-14, the FAC shows an apparent dispute between the parties about the legal effect of disaffirmance, insofar as Adobe initially refused to refund all of T.K.'s payments made under the renewal agreement and only did so after T.K. filed this action, FAC ¶ 34. Accordingly, the Court DENIES Adobe's motion to dismiss the declaratory judgment claim.

## H.    Motion to Strike Class and Subclass Allegations

"There is a split in this District as to whether a motion to strike class action allegations may be entertained at the motion to dismiss stage." *Ogola v. Chevron Corp.*, No. 14-CV-00173-SC, 2014 WL 4145408, at *2 (N.D. Cal. Aug. 21, 2014). "Even courts that have been willing to entertain such a motion early in the proceedings 'have applied a very strict standard to motions to strike class allegations on the pleadings.'" *Nexus 6P Prods. Liability Litig.*, No. 17-cv-2185-BLF, 2018 WL 1156861, at *49 (N.D. Cal. Mar. 5, 2018) (quoting *Ogola*, 2014 WL 4145408 at *2). Thus, "[o]nly if the court is convinced that any questions of law are clear and not in dispute, and that under no set of circumstances could the claim or defense succeed may the allegations be stricken." *Ogola*, 2014 WL 4145408 at *2 (internal quotation marks and citation omitted).

Adobe urges the Court to strike T.K.'s class allegations because the putative class members are bound by arbitration and no-class-action clauses, and because T.K. will not be able to satisfy the commonality, typicality, or adequacy requirements of Rule 23(a) or the predominance requirement of Rule 23(b). Mot. at 14-18. Adobe adds that the putative class lacks standing as to the UCL and CLRA because the putative class includes minors who have not suffered economic harm. *Id.* at 18. Adobe also argues that the Court should strike the subclass allegations because each state would apply its own law of infancy to determine the rights of minors who disaffirm. *Id.* at 19-20 (citing *Mazza v. Am. Honda Motor Co.*, 666 F.3d 581 (9th Cir. 2012)).

Taking Adobe's *Mazza* argument first, "[t]his Court has consistently declined to apply *Mazza* at the motion to dismiss stage to strike nationwide class allegations." *Zapata Fonseca v. Goya Foods Inc.*, No. 16-CV-2559-LHK, 2016 WL 4698942, at *3 (N.D. Cal. Sept. 8, 2016); *see*

23

*also Brazil v. Dole Foods Co.*, No. 12-CV-1831-LHK, 2013 WL 5312418, at *11 (N.D. Cal. Sept. 23, 2013) (holding that without a detailed choice-of-law analysis, the Court was unable to determine whether California's choice-of-law rules apply to bar all, some, or none of the class claims); *Doe v. Successfulmatch.com*, No. 13-CV-3376-LHK, 2014 WL 1494347, at *7 (N.D. Cal. Apr. 16, 2014) (same); *Werdebaugh v. Blue Diamond Growers*, No.: 12–CV–02724–LHK, 2013 WL 5487236, at *15-16 (N.D. Cal. Oct. 2, 2013) (same). Here, aside from Adobe's discussion of *Mazza*, Adobe only offers one paragraph and one footnote of analysis on the choice of law issue. Mot. at 21 & n.3. The Court finds that a more detailed choice-of-law analysis is required to rule on this issue, and so the Court sees no reason to depart from its usual approach of addressing choice-of-law issues at a later stage.

Similarly, although Adobe appears to raise some potentially serious issues with respect to the breadth of T.K.'s proposed class, the Court finds it more appropriate to address these issues at the class certification stage once both sides have had the opportunity to further develop their arguments and engage in discovery. This Court and other courts in this district have similarly declined to address challenges to a putative class's ability to satisfy Rule 23 at the pleading stage. *See, e.g.*, *Nexus 6P Prods. Liability Litig.*, 2018 WL 1156861 at *49 ("Although these [overbreadth] concerns are not without merit, [the defendants'] arguments are more appropriately addressed at a later stage of the proceedings when the issues have been more fully developed and sharpened."); *Perkins v. LinkedIn Corp.*, 53 F. Supp. 3d 1190, 1221 (N.D. Cal. 2014) (declining to strike class allegations based on argument that individual issues will predominate). Accordingly, the Court DENIES Adobe's motion to strike the class and subclass allegations.

## I.       Standing to Pursue Prospective Injunctive Relief

As discussed above, the Court has an "independent obligation to examine standing to determine whether it comports with the case or controversy requirement of Article III, Section 2 of the Constitution." *Krottner*, 628 F.3d at 1141. "A plaintiff must demonstrate constitutional standing separately for each form of relief requested." *Davidson*, 873 F.3d at 1113. "For

injucntive relief, which is a prospective remedy, the threat of injury must be 'actual and imminent, not conjectural or hypothetical.'" *Id.* (quoting *Summers v. Earth Island Inst.*, 555 U.S. 488, 493 (2009)). "Past wrongs, though insufficient by themselves to grant standing, are 'evidence bearing on whether there is a real and immediate threat of repeated injury.'" *Id.* (quoting *City of Los Angeles v. Lyons*, 461 U.S. 95, 102 (1983)). "Where standing is premised entirely on the threat of repeated injury, a plaintiff must show 'a sufficient likelihood that [s]he will again be wronged in a similar way.'" *Id.* (quoting *Lyons*, 461 U.S. at 111). "Finally, a named plaintiff must show that she herself is subject to a likelihood of future injury. Allegations that a defendant's conduct will subject unnamed class members to the alleged harm is insufficient to establish standing to seek injunctive relief on behalf of the class." *Phillips v. Apple Inc.*, 2016 WL 5846992, at *6 (N.D. Cal. Oct. 6, 2016), *aff'd*, --- F. App'x ---, 2018 WL 946743 (9th Cir. Feb. 20, 2018).

Here, as part of the UCL claim, T.K. requests "an injunction requiring Adobe to conform its practices to California and federal law." FAC ¶ 115. In her prayer for relief, T.K. also requests "[a]n injunction that either requires Adobe to either cease selling subscriptions to the ACCP to minors or substantially change its practices regarding transactions with minors, and to otherwise conform its practices with California and federal law." *Id.* at 27 ¶ E. However, T.K. concedes in the FAC that she disaffirmed the contract with Adobe, *id.* ¶ 33, and there is no evidence to suggest that T.K. continues to use ACCP or any other Adobe products or has plans to use such products again. Nor does T.K. allege that she suffers "a real and immediate threat of repeated injury." *Davidson*, 873 F.3d at 1113. Accordingly, T.K. has failed to establish that she has Article III standing to assert injunctive relief claims. The Court therefore DISMISSES T.K.'s requests for injunctive relief for lack of Article III standing. Because T.K. may be able to plead sufficient facts to establish standing, the Court grants leave to amend.

## IV. CONCLUSION

For the foregoing reasons, the Court rules as follows:
- The motion to strike the "all sales are final" allegations is DENIED;
- The motion to dismiss for lack of subject matter jurisdiction based on the arbitration and no-class-action terms of the terms of service is DENIED;

25

- The motion to dismiss the CLRA claim is GRANTED with leave to amend;
- The motion to dismiss the UCL claim is GRANTED with leave to amend as to the fraudulent prong of the UCL and DENIED as to the unlawful prong of the UCL;
- The motion to dismiss the implied covenant of good faith and fair dealing claim is GRANTED with prejudice;
- The motion to dismiss the quasi-contract/unjust enrichment claim is DENIED;
- The motion to dismiss the declaratory judgment claim is DENIED;
- The motion to strike the class and subclass allegations is DENIED;
- The Court DISMISSES sua sponte with leave to amend the requests for prospective injunctive relief for lack of Article III standing.

If T.K. fails to file a second amended complaint within 30 days or fail to cure the deficiencies identified in this order or in any of Adobe's two motions to dismiss, the claims dismissed in this order will be dismissed with prejudice. T.K. may not add new causes of action or new parties without a stipulation or leave of the Court.

**IT IS SO ORDERED.**

Dated: April 17, 2018

_Lucy H. Koh_

LUCY H. KOH
United States District Judge

26